3 Dec.
1

# EVIDENCE—NEGLIGENCE.

[Lucas Circuit Court, March 23, 1895.]

NICHOLAS DIXON, ADMINISTRATOR, v. LOUISE WACHENHEIMER ET AL.

1. COMPETENCY OF OPINIONS OF EXPERT WITNESSES AS TO EFFECT OF FIRE ON BRICK AND MORTAR WALLS.

In an action to recover damages for the destruction of property, caused by the falling of a wall of a brick and stone building previously destroyed by fire, it is competent to inquire of witnesses, who are builders of experience and have had opportunities to observe the effect of fire on brick and mortar, as to what that effect is, it being alleged, in the petition, that the defendants negligently permitted said wall to stand for several days after the fire, they knowing it was weakened and made dangerous thereby.

2. LIABILITY OF THE OWNERS OF THE RUINS OF A BUILDING DESTROYED BY FIRE, WHERE THE FIRE DEPARTMENT PRONOUNCES SUCH RUINS SAFE, AND THEY SUBSEQUENTLY FALL AND DESTROY PROPERTY.

The fact that the fire department of the municipality in which said building was destroyed took possession of the ruins thereof, and, by the exercise of reasonable care, tested said wall and pronounced it safe, would not excuse the owners of such ruins from the exercise of ordinary care on their part in examining and caring for said wall.

3. LIABILITY OF SUCH OWNERS FOR THE WANT OF ORDINARY CARE WHERE THEY ARE NOT EXCLUDED FROM THE POSSESSION OF SUCH RUINS.

In such action it is error to so instruct the jury that they may find, if such owners were not excluded from the possession of such ruins by the fire department, they would be excused from exercising ordinary care.

4. DEGREE OF CARE TO BE EXERCISED ON SUNDAY.

The degree of care which the law requires of all persons in the management of their own affairs and in the control of their own property, must be exercised on Sunday the same as on any other day, and is never suspended.

KING, J.

This is a proceeding to reverse the judgment of the common pleas, rendered at its April term, 1894, which was a judgment upon the verdict of the jury in favor of defendants. The title of the case in the common pleas was the same as here.

April 19, 1893, Joseph Flynn, then in life, filed his petition in the court of common pleas against the defendants, and he alleged in that petition that he was the owner of certain real estate situated on Monroe street in the city of Toledo, and that about 20 feet easterly from his premises was situated a large brick and stone structure which belonged to the defendants, known as the Wheeler Opera House, with walls 50 or 60 feet in height; that on the night of the 16th of March, 1893, the Wheeler Opera House was burned and totally destroyed by fire, except that the west wall of said building was left standing; and that this wall was about 20 feet from the plaintiff's premises, and was left there for six days, when it fell upon the plaintiff's building, which stood nearest to the wall, and totally destroyed it, and also injured the easterly wall of another building of his which was situated 16 feet westerly of the first mentioned building, across

an alley. He further alleges that the defendants knew, or by the exercise of or-dinary care should have known that this wall was dangerous to life and property, and likely to fall, but that nevertheless they negligently and carelessly permitted it to remain; that it was weakened and made dangerous by fire, and that it remained standing, unsupported, for a period of six days, when it should have been taken down immediately; that by reason of their negligence in that respect the wall fell and destroyed the plaintiff's building to his damage in the sum of ten thousand dollars.

To this petition several answers were filed by the defendants, and replies to these answers were filed, and a trial had.

I should say that during the pendency of the suit in the common pleas court, Joseph Flynn died, and Nicholas Dixon was appointed his administrator, and the action was revived in his name, and stands now in the name of Nicholas Dixon, administrator.

It is claimed here by the plaintiff in error that error was committed in the trial of the case principally in three respects: First, that the court erred in sus-taining the objection of the defendants to certain evidence that was offered by the plaintiff; and, second, that the court erred in respect of its charge to the jury, more particularly in giving the requests of defendants, which are numbered 3, 12, 13 and 14; also that the verdict was not sustained by the evidence.

I will refer first to the question relating to the objections to the evidence: Two witnesses, Carl Schmuhl and Robert Burge, were inquired of by the plaintiff as to their experience in observing and handling walls that had been affected by strong heat. Both of them were builders and contractors of many years exper-ience. Both testified that they had seen walls that had been left after a building had been burned, and had had some experience in observing the effect of heat on mortar and brick in the wall. They were then inquired of what that effect was. This was objected to, and sustained. It seems that that effect was something that an ordinary juror might not be expected to know; that it was knowledge not common to people generally, and if pertinent in the case, was such that a person having large experience in the matter might be called to testify to it.

The supreme court of Ohio have said in two or three different cases, and es-pecially in 32 O. S., 78–93, that when from the nature of the case, opinions of persons acquainted with the subject under consideration are the best testimony to be obtained, they are competent, and in that case, the court say, in the syllabus:

When the actual effect of a known agency is unknown, and the opinion of one familiar, by actual observation, with the matter under consideration, is the best testimony the subject matter to be investigated affords, the opinion of such person may be received as testimony.

To the same effect is the very able and learned opinion of the court in the case of *Railroad Company* v. *Schultz*, 43 O. S., 270–285. On page 283 the court say:

"Where the facts concerning their condition cannot be made palpable to the jurors, so that their means of forming opinions are practically equal to those of the witnesses, opinions of such witnesses may be received, accompanied by such facts supporting them as they may be able to place intelligently before the jury."

It occurs to us that these witnesses were competent to testify to the particu-lar opinion called for. They had had some experience and had observed the con-dition and quality of brick and mortar walls after they had been subjected to fire; and as that was something that everybody might not know as well as those who had observed it, it was proper to prove it in this case, if that question was material. And it seems to be material, in this respect, at least; that the question all of the time to be kept before the jury, and to be determined by them, was, whether the defendants had exercised ordinary care in examining, watching, and caring for this wall after the fire; and if it was a fact known to men who were familiar with such facts, that a fire, such as this fire was conceded to be by all the parties, an exceedingly hot fire would have a deteriorating effect upon a brick

and mortar wall, it would have been a proper subject for the defendants to inquire into. This testimony was not necessarily competent as bearing upon the ultimate fact whether the wall was weak or not, but whether it was a subject that the defendants should have made inquiry about, in order to ascertain, in the exercise of ordinary care, the effect of fire upon such a wall. In connection with the rest of the testmony offered as to the actual condition of this wall, at and previous to the time it fell, it would seem to us to have been entirely competent to show, by those familiar with the facts, the effects of a fire such as this was, upon a brick and mortar wall.

I pass from that objection to the charge, which is the principal objection to this verdict and judgment.

The court charged the jury in this case, first with reference to the issues of the case, and made some general remarks upon the subject of negligence, and then gave to the jury the requests of the parties. The plaintiff requested the court to give seven different special and separate charges to the jury, which the court gave, and the defendants made fourteen special requests, which the court gave with the exception of the sixth; and these requests constituted about all that the court said with reference to the special circumstances of this accident and loss. The court began these requests of the defendant by giving the first and second, which to show the connection with the third I will read:

1. The jury are instructed that the city through its fire department, had the right to take possession of the opera house property while being destroyed by fire and for a reasonable time thereafter, to the exclusion of the owners and all others; and if the wall in question fell while the said property was in the exclusive control of said city, then the owners cannot be held responsible therefor.

2. The owners of the property were entitled to a reasonable time after the fire and after they obtained possession of the premises, to remove the wall, and if the jury find such reasonable time had not elapsed, then defendants cannot be held liable in this action.

While these two requests are excepted to, we do not find any particular objection to their language. But here follows the third:

3. The jury are instructed that if the fire department used reasonable care to test the wall in question, and after exercising such reasonable care, concluded that said wall was reasonably safe, standing as it was, then the care so exercised by the fire department inures to the benefit of the defendants, owners of the property, and they cannot be held responsible.

In other words, if the fire department were satisfied that this wall was safe, standing as it did on private property belonging to the defendants, then the defendants were relieved from all responsibility to exercise ordinary care themselves, to examine and care for this wall in the situation in which it stood. That would seem to us to be excusing the defendants, and would be understood by the jury as excusing the defendants, from the exercise of any care, provided the fire department had taken possession of this wall and themselves had exercised care. The fire department were not the owners of the wall—had no property interest in it. Perhaps they would have no control over it, excepting so far as the wall might be dangerous to the public who would occupy or be traveling upon the streets adjacent. But certainly this is subject to the criticism that it undertakes to relieve the defendants from any responsibility whatever.

The balance of the requests that are excepted to are not objectionable until the 12th. There the jury were instructed as follows:

If the jury is satisfied from the evidence that the fire department, while in possession of the opera house premises, were continuously engaged in extinguishing the fire and removing such parts of the standing ruins as were of a dangerous character, and in so doing did all that a reasonably prudent man would have done under the circumstances, the defendants are relieved from the obligation of exercising care until after a reasonable time from the time that the said fire department gave up possession had expired.

This is more objectionable on account of the language used than on account of the law expressed. If it was understood by that charge to say to the jury, as

was said once before, in the first and second requests, that if the fire department had possession of this property and excluded the defendants therefrom, during the time of such exclusion the defendants were manifestly excused from exercising any care with reference to the wall, but in the absence of such exclusion, it was not the law, and the jury ought not to be instructed that if the defendants were not excluded they would be excused from the exercise of ordinary care; and by this instruction in connection with the third, which I have read, it seems that they were so instructed.

After the statement that the defendants would not be required to exercise care until a reasonable time after the fire department gave up possession, the court then says:

13. In determining what such reasonable time is, Sunday must be excluded unless the jury find that the wall causing the damage was so notoriously, obviously and imminently dangerous as to cause a man of reasonable prudence to take immediate action in removing it.

14. If the jury find that said westerly wall of the opera house was not so obviously, notoriously and imminently dangerous as to call for action on Sunday in removing it, and further find that the Monday intervening before the wall fell was not such reasonable time to which defendants are entitled, and did not afford defendants a reasonable opportunity to inspect, examine and remove said wall, then it is the duty of the jury to return a verdict for the defendant.

Now those requests, taken together, it seems to us, have at least two decided objections. In the first place they excluded from the jury the consideration of the question which should have been submitted to it, whether there was time preceding Sunday for the defendants to have taken possession of the property—whether the fire department gave up possession previous to Sunday. I will observe here that the fire occurred on Friday morning at two o'clock, and the evidence indicates that the fire department practically finished their work on Friday sometime, though they were around there on Saturday morning; but there is no evidence in the record to show, as I have been able to find, that they were there about the premises on Saturday afternoon at all. In the second place it relieves the defendants from the exercise of any care on Sunday. We do not understand that this is the law. That a person's care, the degree of care which all persons are required by law to exercise in managing their own affairs and in the control of their own property is suspended by Sunday, is a proposition that I do not think is supported by law. The question to be submitted to the jury was whether the defendants had exercised ordinary care here, and we cannot say that it made any difference whether that ordinary care should have been exercised on Sunday or Friday or Saturday. It is the degree of care which the law requires all the time, which is never suspended, and whether that degree of care was such as reasonable and prudent persons are accustomed to exercise in the management of their own affairs under the same or similar circumstances. The circumstances were that this opera house, a building eighty feet one way and something like one hundred feet the other, had been burned down by fire. The outside walls were left standing when the fire died out and the fire department, for the protection of the public, pulled down the walls on Monroe and St. Clair streets and pulled off the top of the northerly wall, but left standing and unsupported the westerly wall, which the testimony shows was between fifty and sixty feet in height and over one hundred feet in length. Adjoining the westerly wall was a two-story wall, twelve inches in thickness, running up within about twenty feet of the top of this high wall, but next to which a store building had been substantially destroyed by the fire; and this wall, to a certain extent was likewise weakened. These circumstances required the defendants to exercise that degree of care imposed upon all human beings of an age to be responsible for their conduct. That was the question to be submitted to the jury; but the jury were clearly instructed that the defendants were relieved from the exercise of ordinary care because Sunday intervened and after Sunday had closed and passed away, then the obligation to exercise ordinary care revived, and then the defendants would have a reasonable time in which to examine this wall, if it required any examination on their part.

In these respects we think the charge was misleading and did not give to the jury the true rule which should have been given to them as to the conduct and actions of the defendant, and the time when that conduct and those actions should have been exercised.

For giving these four requests and for error in refusing to admit the testimony offered, this judgment will have to be reversed. For that reason we will not undertake to pass at all upon the question of the weight of evidence.